# In the United States Court of Federal Claims

No. 18-1032C

(E-Filed:  August 30, 2019)

| | | |
|---|---|---|
| KUDSK CONSTRUCTION, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Contract; RCFC 12(b)(6); Plausible Claim for Damages Due to Delayed Notice to Proceed; Reporting Requirements Not Necessarily Incorporated into Contract by <u>Christian</u> Doctrine.

<u>William J. Braun</u>, La Jolla, CA, for plaintiff.

<u>Rebecca S. Kruser</u>, Trial Attorney, with whom were <u>Joseph H. Hunt</u>, Assistant Attorney General, <u>Robert E. Kirschman, Jr.</u>, Director, and <u>Deborah A. Bynum</u>, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant.  <u>MAJ Christopher A. Lacour</u>, United States Army Litigation Division, Fort Belvoir, VA, of counsel.

## OPINION

CAMPBELL-SMITH, Judge.

This matter is before the court on defendant's motion for partial dismissal, filed pursuant to Rule 12(b)(6) of the Rules of the United States Court of Federal Claims (RCFC), addressing a portion of Count I and all of Count IV of plaintiff's complaint.  <u>See</u> ECF No. 8.  Plaintiff's complaint, ECF No. 1, plaintiff's response to defendant's motion to dismiss, ECF No. 9, and defendant's reply, ECF No. 16, were also considered by the court.  Oral argument was not requested by the parties nor required by the court.  For the reasons set forth below, defendant's motion is **DENIED**.

I.     Background[1]

Plaintiff Kudsk Construction, Inc. (Kudsk) was awarded a construction contract, Contract No. W9124N-09-C-0040, by the United States Army Reserve Contracting Center (Army) on or about September 11, 2009. ECF No. 1 at 1-2. The contract was for the renovation of six barracks at an Army Reserve Training Area. Id. at 2. Approximately ten days after award, the Army notified Kudsk to suspend any work on the contract, because a bid protest had been filed. Id. On December 1, 2009, Kudsk was notified that the protest had been denied and that the work could proceed. Id. Kudsk filed a claim on December 30, 2009, under Federal Acquisition Regulation (FAR) 52.233-3(b)(2), for "administrative and overhead" incurred while "waiting for [a] Notice to Proceed."[2]   Id.

After contract performance was complete, Kudsk filed a certified claim with the contracting officer. Id. at 3. Two elements of that claim, which was approved in part and denied in part, are at issue in the motion for partial dismissal now before the court. In Count I of the complaint, Kudsk seeks "increased costs and unabsorbed home office expenses" for the period of time Kudsk was on standby, from September 11, 2009, through December 11, 2009, when the Notice to Proceed issued. Id. at 4-5. This claim is in the amount of $66,738. Id. at 5.

In Count IV of the complaint, Kudsk asserts that on or about July 15, 2010, the Army directed Kudsk to comply with the reporting requirements of the American Recovery and Reinvestment Act of 2009 (ARRA), Pub. L. No. 111-5, Div. A, § 1512, 123 Stat. 115, 287-88, pursuant to a regulation that was not part of this construction contract. ECF No. 1 at 8. Kudsk began complying with these reporting requirements under protest. Id. at 9. According to Kudsk, the cost of compliance with ARRA reporting requirements over the period of contract performance was $6,739, and this amount, too, was included in plaintiff's certified claim. Id.

Defendant's motion to dismiss asserts that the claim for unabsorbed home office overhead contained in Count I, and the claim for ARRA reporting costs in Count IV, should be dismissed for failure to state a claim upon which relief can be granted. To the extent that Count I also contains a claim for "increased costs" that is distinct from

---

[1]     The facts recounted here are taken from the complaint. The court makes no findings of fact in this opinion. Although the government invites the court to consider exhibits attached to its motion to dismiss to support the dismissal of a portion of Count I of the complaint, the court does not require these exhibits for its analysis. See ECF No. 8 at 7 n.2.

[2]     All citations to the Federal Acquisition Regulation (FAR) in this opinion are to the 2018 version of Title 48 of the Code of Federal Regulations, unless otherwise noted.

plaintiff's unabsorbed home office overhead claim, such a claim is not addressed in defendant's motion for partial dismissal. ECF No. 8 at 10-11; ECF No. 16 at 1 n.1. For the reasons set forth below, neither of the claims identified by defendant's motion can be dismissed pursuant to RCFC 12(b)(6).

II.     Standard of Review

When considering a motion to dismiss brought under RCFC 12(b)(6), "[w]e must presume that the facts are as alleged in the complaint, and make all reasonable inferences in favor of the plaintiff." Cary v. United States, 552 F.3d 1373, 1376 (Fed. Cir. 2009) (citing Gould Inc. v. United States, 935 F.2d 1271, 1274 (Fed. Cir. 1991)).  It is well-settled that a complaint should be dismissed under RCFC 12(b)(6) "when the facts asserted by the claimant do not entitle him to a legal remedy." Lindsay v. United States, 295 F.3d 1252, 1257 (Fed. Cir. 2002).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

III.    Analysis[3]

A.      Count I – Unabsorbed Overhead Claim

1.      Introduction

When the government delays a construction contract, so that no direct costs are incurred by the contractor for a period of time, fixed home office overhead costs, which normally are paid proportionally through payments for the direct costs of various construction projects, may be "unabsorbed."  Defendant's motion provides this explanation of the concept:

> A contractor recovers these indirect costs, such as home office overhead, by allocating a share of these costs to each contract throughout the year, with allocation proportional to the direct costs of each contract.  When the Government suspends performance under the contract, the contractor ceases to incur direct costs.  If the Government requires the contractor to be on standby during the suspension, so to begin work immediately or on short notice, then the contractor may be unable to take on replacement work and recover the proportional share of the home office overhead originally allocated to the suspended project.  This unrecovered home office overhead

---

[3]     The court has considered all of the parties' arguments.  The court only discusses in this opinion the arguments that were dispositive.

is unabsorbed during the period of suspension and, under very specific circumstances, a contractor may be entitled to compensation.

ECF No. 8 at 11 (internal quotations and citations omitted).  Plaintiff's Count I clearly contains a claim for unabsorbed home office overhead.  ECF No. 1 at 4-5; see also ECF No. 9 at 5 ("The reasonable implication of these allegations is that KUDSK was unable to bid on new work to cover its overhead costs during the suspension period, and that during that period of time the project was unable to cover its share of overhead expenses.").  This type of claim is often referred to as a claim for Eichleay damages, but here it is better to describe plaintiff's claim as a claim for unabsorbed overhead.  See ECF No. 8 at 11-12 (citing Eichleay Corp., ASBCA No. 5183, 60-2 BCA ¶ 2688, 1960 WL 538 (July 29, 1960)).

> 2.    Fact Issue Not Readily Resolved on a Motion to Dismiss

Before turning to the elements of proof for unabsorbed overhead, and the question of whether plaintiff has stated a claim for unabsorbed overhead in this suit, the court notes that one of the elements of this type of claim is often fact intensive.  The contractor must prove that while it was on standby, alternative work could not be performed during the delay in performance due to the contractor's commitment to the government to return to the government's project on short notice.  See, e.g., P.J. Dick Inc. v. Principi, 324 F.3d 1364, 1371 (Fed. Cir. 2003) (stating that "the contractor must show that during that delay it was required to be ready to resume work on the contract, at full speed as well as immediately") (citation omitted).  The question of whether the contractor was on standby is more commonly addressed by this court on summary judgment than through the resolution of a motion to dismiss, and this factual question is not always even susceptible to resolution on summary judgment.  See H.J. Lyness Constr., Inc. v. United States, 121 Fed. Cl. 287, 292-94, 296 (2015) (granting summary judgment in favor of the government because the contractor was not on standby during the period of delay), aff'd, 652 F. App'x 972 (Fed. Cir. 2016) (table); JMR Constr. Corp. v. United States, 117 Fed. Cl. 436, 443-45 (2014) (denying the government's motion for partial summary judgment as to the standby issue regarding the first period of delay, but granting summary judgment in favor of the government on the standby issue for the second period of delay); Redland Co. v. United States, 97 Fed. Cl. 736, 751 (2011) (granting summary judgment in favor of the government on the standby issue); Oak Envtl. Consultants, Inc. v. United States, 77 Fed. Cl. 688, 702 (2007) (denying cross motions for summary judgment, in part, because further fact-finding was needed to determine whether the contractor had been placed on standby); Ryco Constr., Inc. v. United States, 55 Fed. Cl. 184, 202 (2002) (denying the government summary judgment on Eichleay damages because it was "a triable issue whether plaintiff was on standby").  With this procedural consideration in mind, the court turns to the parties' arguments regarding plaintiff's claim for unabsorbed overhead in the circumstances of this contract dispute.

> 3.    Precedential Guidance in Nicon Applied to This Case

According to defendant, plaintiff's unabsorbed overhead claim is barred by the United States Court of Appeals for the Federal Circuit's decision in Nicon, Inc. v. United States, 331 F.3d 878 (Fed. Cir. 2003). ECF No. 8 at 13. The government has three propositions that are derived from its reading of Nicon. First, according to the government, no Eichleay damages can be awarded for delays that occur before a Notice to Proceed has issued. ECF No. 8 at 13 (citing Nicon, 331 F.3d at 885). Second, the government argues that no alternative compensation formula, different from the Eichleay formula, is applicable in this case, because the alternative formula permitted in Nicon can only be used in situations where unabsorbed overhead should be included in a termination for convenience settlement. Id. at 14 (relying on Nicon, 331 F.3d at 888; Redland, 97 Fed. Cl. at 748). Third, defendant argues that Kudsk cannot show that it meets the strict prerequisites for an award of unabsorbed overhead, as these prerequisites are stated in Nicon. Id. at 15 (citing Nicon, 331 F.3d at 885). The court notes that defendant relies, to a great extent, on this court's Redland decision for its interpretation of Nicon.[4] Id. at 11, 14-17; ECF No. 16 at 2-8.

          a.      No Categorical Bar in Nicon Regarding Unabsorbed
                   Overhead Claims for Pre-Performance Delays Caused by the
                   Government

There are two statements in Nicon which might bar unabsorbed overhead claims for delays that occur prior to the issuance of a Notice to Proceed. First, "[w]e agree with the Court of Federal Claims that constructive figures may not be substituted into the Eichleay formula and that use of the formula is limited to situations in which contract performance has begun and has been suspended by the government, causing the performance to take longer than originally anticipated." Nicon, 331 F.3d at 884. Similarly, the Federal Circuit reaffirmed this aspect of its holding: "The Court of Federal Claims was therefore correct in concluding that the Eichleay formula is only applicable in situations in which contract performance has begun." Id. The court notes, however, that each of these statements categorically limits the use of the Eichleay formula to delays that occur after a Notice to Proceed has issued, but neither of these statements addresses the question of whether unabsorbed overhead might be available if the quantum of the claim were calculated in some other way.[5]

---

[4]     Decisions of this court do not establish binding precedent for this case. E.g., W. Coast Gen. Corp. v. Dalton, 39 F.3d 312, 315 (Fed. Cir. 1994).

[5]     It should be noted that the Armed Services Board of Contract Appeals (ASBCA), in one decision, has interpreted the holding in Nicon to apply only to situations where the delay occurred before performance began and where the contract was never performed. See Alderman Bldg. Co., ASBCA No. 58082, 15-1 BCA ¶ 35841, 2014 WL 7260695 (Dec. 9, 2014) (suggesting that the Eichleay formula still applies to pre-performance delays where contract performance later occurred, if the prerequisite elements to support

In <u>Redland</u>, this court interpreted those statements from the Federal Circuit, which limited the use of the <u>Eichleay</u> formula, as a ban on the availability of unabsorbed overhead for delays occurring before contract performance had begun.  97 Fed. Cl. at 747-48 (citing <u>Nicon</u>, 331 F.3d at 884-85, 888).  Here, the court prefers to adhere strictly to the text of <u>Nicon</u>.  Plaintiff cannot benefit from the <u>Eichleay</u> formula, but there is no holding in <u>Nicon</u> which categorically bars plaintiff from recovering unabsorbed overhead for the three-month delay before the Army issued its Notice to Proceed.[6]

Indeed, the viability of a claim for unabsorbed overhead brought by a contractor who is prevented from starting construction is one of the primary holdings in <u>Nicon</u>.  331 F.3d at 881 ("We . . . remand for further proceedings to determine if Nicon may recover unabsorbed overhead damages as part of its termination for convenience settlement by some other method of allocation"); <u>id.</u> at 884 ("However, [just because the <u>Eichleay</u> formula is inapplicable] does not mean that a contractor, who is required to remain on standby because of a government-caused delay but is never allowed to begin performance, may not receive some of its unabsorbed home office overhead as part of its termination for convenience settlement by some other method of allocation."); <u>id.</u> at 886 ("Even if there is no date set in the contract by which a notice to proceed must issue, there is an implied obligation on the part of the government to issue the notice to proceed within a reasonable time." (citing <u>Ross Eng'g Co. v. United States</u>, 92 Ct. Cl. 253 (1940)); <u>id.</u> at 888 ("[I]n situations in which contract performance has not yet begun, but the government terminates the contract for convenience after a period of delay, the contractor is not left without a remedy.  The contractor may recover unabsorbed overhead costs as part of its termination for convenience settlement if a reasonable method of allocation can be determined on the facts of the case and the contractor can otherwise satisfy the strict prerequisites for recovery of unabsorbed overhead costs.").  Thus, the Federal Circuit allowed a claim for unabsorbed overhead to be litigated, where performance had not begun and the contract was terminated for the convenience of the government.  In the court's view, the text of the <u>Nicon</u> decision does not include a categorical bar on claims for unabsorbed overhead based on delays that occur before a Notice to Proceed is issued, and respectfully disagrees with the <u>Redland</u> decision on this point.

> b.      Alternative Formulas Not Necessarily Barred by <u>Nicon</u>

There are two plausible readings of <u>Nicon</u> regarding the use of alternative formulas, other than the <u>Eichleay</u> formula, to support an unabsorbed overhead claim.

---

a claim for <u>Eichleay</u> damages are met (citing <u>Nicon</u>, 331 F.3d at 888)).  In the court's view, this reading of <u>Nicon</u> is not persuasive.  <u>See</u> <u>infra</u> note 7.

[6]      The court notes that the interpretation of <u>Nicon</u> presented in <u>Redland</u> has not been cited in later decisions on the topic of claims for unabsorbed overhead.

Relying on Redland, the government argues that in Nicon, alternative formulas were only approved for use in the circumstance where a pre-performance delay was followed by a termination for convenience before performance could occur.[7]  ECF No. 8 at 14 (citing Redland, 97 Fed. Cl. at 748); ECF No. 16 at 3-4 (citing Redland, 97 Fed. Cl. at 747). One could also read Nicon as creating an exception which allows for the use of alternative formulas in the context of pre-performance delays followed by a termination for convenience, and leaving open the possibility that this exception could be extended to other pre-performance delay scenarios.

This court's decision in Redland notes that using alternative formulas to show unabsorbed overhead for anything other than a termination for convenience settlement would be an extension of Nicon.  See Redland, 97 Fed. Cl. at 748 (stating that "the court need not decide whether Nicon's holding can be extended to other situations").  The court has not found any binding precedent on this topic.  In the absence of binding precedent as to the possible extension of the exception created by the Nicon decision for alternatives to the Eichleay formula, the court cannot state that Kudsk's unabsorbed overhead claim is foreclosed as a matter of law by the Nicon decision.

c.    Nicon's Strict Prerequisites for Unabsorbed Overhead Claims Involve Disputed Facts

As the Federal Circuit's most recent pronouncement on unabsorbed overhead claim prerequisites, Nicon provides binding precedent that must be applied in this case.[8]

---

[7]    In Alderman, the ASBCA also construed the Nicon exception, allowing alternative formulas to support a claim for unabsorbed overhead, as a narrow one that only applies to termination for convenience cases.  See Alderman, 2014 WL 7260695 (asserting that the Nicon "court stressed that its holding did not extend to cases in which 'performance of the contract does eventually occur or resume after the government-caused delay'" (quoting Nicon, 331 F.3d at 883) (emphases added)).  But that quote in Alderman is not the holding of Nicon.  The full sentence in Nicon, which is only partially quoted by the ASBCA, is not a holding but a description of other cases which are distinguishable because they arose from different facts:  "In the typical cases dealing with the application of the Eichleay formula, performance of the contract does eventually occur or resume after the government caused delay."  331 F.3d at 883.  The clear holding in Nicon is found, instead, in this statement:  "the Eichleay formula is only applicable in situations in which contract performance has begun."  Id. at 884.

[8]    This type of unabsorbed overhead claim is the subject of "long standing" guidance in binding precedent, Capital Elec. Co. v. United States, 729 F.2d 743, 747 (Fed. Cir. 1984), and the Nicon decision must be presumed to correctly apply this entire body of precedent, see Johnston v. IVAC Corp., 885 F.2d 1574, 1579 (Fed. Cir. 1989) ("Where conflicting statements . . . appear in our precedent, the panel is obligated to review the cases and reconcile or explain the statements, if possible."); see also P.J. Dick, 324 F.3d

The three prerequisites are as follows:  (1) "there must have been a government-caused delay of uncertain duration"; (2) "[t]he contractor must also show that the delay extended the original time for performance or that, even though the contract was finished within the required time period, the contractor incurred additional costs because he had planned to finish earlier"; and (3) "the contractor must have been on standby and unable to take on other work during the delay period."  Nicon, 331 F.3d at 883 (citations omitted).  The government appears to concede that the complaint alleges a government-caused delay of uncertain duration.  ECF No. 8 at 15.

As to the second and third prerequisites, plaintiff argues that the complaint proffers sufficient facts for these elements, or, in the alternative, that leave to amend the complaint should be given to set forth adequate facts in support of these elements.  ECF No. 9 at 5-6.  As a threshold matter, the court notes that the parties dispute whether plaintiff's contract was completed on time.  ECF No. 1 at 3; ECF No. 7 at 2 (answer).  The parties also hotly dispute whether plaintiff was on standby from September 11, 2009, through December 11, 2009.  ECF No. 8 at 16-17; ECF No. 9 at 5-6; ECF No. 16 at 6-7.  In this regard, plaintiff has alleged that its bonding capacity, strained by the government's project, would not allow it to take on other work while it was on standby.  ECF No. 1 at 4.

The court concludes that the complaint contains a plausible unabsorbed overhead claim in Count I, under Nicon.[9]  Both parties intend to file motions for summary judgment at the close of discovery.  See ECF No. 17 at 2 (joint preliminary status report).  Whether plaintiff's unabsorbed overhead claim will survive cross-motions for summary judgment is a question the court reserves for further inquiry.  Plaintiff may seek leave, at its option, to amend its complaint in light of the court's holdings in this opinion regarding Count I.

B.      Count IV – ARRA Reporting Requirements

---

at 1372 (looking to the Federal Circuit's "later decisions" for guidance on the standby prerequisite for unabsorbed overhead claims).

[9]      Plaintiff relies upon Interstate General Government Contractors, Inc. v. West, 12 F.3d 1053 (Fed. Cir. 1993), as support for the viability of an unabsorbed overhead claim based on pre-performance delay, and as support for recovery through FAR 52.233-3.  ECF No. 9 at 3-4.  The court agrees that Interstate, when read in conjunction with the majority's opinion in Nicon, adds plausibility to plaintiff's claim in Count I.  The court notes, too, that Interstate contains seminal guidance regarding the elements of proof for an unabsorbed overhead claim, as evidenced by extensive citations to Interstate in both Nicon and P.J. Dick.  To the extent that defendant's reply brief could be read to conclude that Interstate is no longer good law, the court would disagree.  ECF No. 16 at 5.

According to Count IV of the complaint, Kudsk "incurred administrative costs preparing and submitting ARRA reports to the Contracting Officer along with its monthly payment applications." ECF No. 1 at 9. Plaintiff views these costs as flowing from a unilateral change to the contract for which the government must pay. Id. The government argues that ARRA reporting requirements must be incorporated into the contract through the Christian doctrine and that the Army owes nothing to Kudsk for the costs of compliance with these requirements. See ECF No. 8 at 19, 22-25 (citing G. L. Christian & Assocs. v. United States, 320 F.2d 345 (Ct. Cl. 1963) (Christian II); G. L. Christian & Assocs. v. United States, 312 F.2d 418 (Ct. Cl. 1963) (Christian I). It is not clear to the court, however, that the Christian doctrine applies to ARRA reporting requirements in the circumstances of this case.

> 1.   Christian Doctrine Overview

Generally, "under the Christian doctrine, a court may insert a clause into a government contract by operation of law if that clause is required under applicable federal administrative regulations." K-Con, Inc. v. Sec'y of Army, 908 F.3d 719, 724 (Fed. Cir. 2018) (citation omitted). "For a court to incorporate a clause into a contract under the Christian doctrine, it generally must find (1) that the clause is mandatory; and (2) that it expresses a significant or deeply ingrained strand of public procurement policy." Id. (citation omitted). The first prong of the doctrine is satisfied if the clause is mandatory, i.e., if the clause is required by statute or regulation. Id. The second prong often examines how long a particular practice or policy has been in existence. See id. at 726 (noting that the bonding requirement discussed in that case had been a feature of government construction contracts since 1935). A court may also consider whether the policy or practice serves a vital purpose in protecting the government from excessive contract payments. See, e.g., Gen. Eng'g & Mach. Works v. O'Keefe, 991 F.2d 775, 780 (Fed. Cir. 1993) (General Engineering) (incorporating into a government contract an omitted, mandatory clause because, in part, it "discourages the unnecessary and wasteful spending of government money").

> 2.   Christian Doctrine Prong One:  Whether ARRA Reporting
> Requirements Were Mandatory for Plaintiff's Contract

The inquiry into the first prong of the Christian doctrine, as it might apply to plaintiff's construction contract, focuses, first, on regulatory language. As defendant argues, the relevant FAR provisions were phrased in terms that were mandatory in nature, so that contractors benefiting from ARRA funds were required to submit reports which tracked the expenditure of ARRA funds in various ways. See ECF No. 8 at 21-22 (citing Federal Register for amendments to the FAR addressing ARRA reporting requirements, such as former provisions, specifically FAR 4.1500, FAR 4.1501(c), FAR 4.1502, and FAR 52.204-11, which are no longer contained in the current FAR); see also FAR Case 2009-009, American Recovery and Reinvestment Act of 2009 (the Recovery Act)-- Reporting Requirements, 74 Fed. Reg. 14639, 14644-46 (Mar. 31, 2009)). Thus, there

appears to be no real dispute that under the version of the FAR that was applicable when Kudsk entered into its contract with the Army, ARRA reporting requirements were established in the FAR as mandatory.  This determination does not end the inquiry, however.

It is not clear from the record that Kudsk's contract with the Army, Contract No. W9124N-09-C-0040, was funded in whole or in part by ARRA funds.  The complaint alleges that the contracting officer informed Kudsk it should begin submitting ARRA reports in July 2010, approximately ten months after contract award and approximately seven months after Kudsk received the Notice to Proceed with contract performance. ECF No. 1 at 8.  Nowhere in defendant's answer, motion to dismiss, or reply brief, however, does the government affirmatively state that Contract No. W9124N-09-C-0040 was funded in whole or in part with ARRA funds.  Instead, defendant merely asserts that "Kudsk does not allege that its contract was not funded through the ARRA, or any other reason why the ARRA reporting requirements would not be applicable."  ECF No. 8 at 25.  Thus, defendant's argument that ARRA reporting was mandatory for Contract No. W9124N-09-C-0040 is not supported by any evidence that ARRA funding for this contract triggered the mandatory reporting requirements set forth in the FAR at that time.

Nor has defendant alleged that Kudsk was on notice that its contract was funded in whole or in part by ARRA funds.  Indeed, the most obvious, and mandatory, provision of such notice would have been the inclusion of FAR 52.204-11 setting forth ARRA reporting requirements with which Kudsk would need to comply.  See ECF No. 8 at 21-22 (arguing that at this time FAR 4.1502 required contracting officers to insert FAR 52.204-11 into all solicitations funded in whole or in part by ARRA).  Plaintiff's complaint states that FAR 52.204-11 was not included in Contract No. W9124N-09-C-0040, and that Kudsk refused to sign a bilateral modification that would have inserted this clause into the contract after performance had begun.  ECF No. 1 at 8-9.  Defendant accepts this allegation in the complaint as true for the purposes of its motion to dismiss.  ECF No. 8 at 23.  Further, the government does not contend that notice of ARRA funding for Contract No. W9124N-09-C-0040 was provided to Kudsk by some other means.

Lack of notice, on this record, undermines defendant's argument that Kudsk cannot escape the incorporation of FAR 52.204-11 into its contract.  Defendant argues that Kudsk was aware, or should have been aware, of ARRA reporting requirements. ECF No. 8 at 25 (citing General Engineering, 991 F.2d at 780).  But unless Kudsk was on notice that its contract, Contract No. W9124N-09-C-0040, used ARRA funds and thus would be subject to ARRA reporting requirements, its awareness, or presumed awareness, of ARRA reporting requirements in the FAR would be immaterial.

To restate the court's analysis regarding prong one of the Christian doctrine inquiry, the court agrees with defendant that ARRA reporting requirements were mandatory.  However, the record does not establish that Contract No.

W9124N-09-C-0040 was funded in whole or in part with ARRA funds, or that plaintiff was on notice that it was entering into a contract subject to ARRA reporting requirements.  Given the current state of the record before the court, prong one of the <u>Christian</u> doctrine has not been satisfied.  In other words, defendant has not shown that FAR 52.204-11 was a mandatory contract clause that should be incorporated into Contract No. W9124N-09-C-0040 pursuant to the <u>Christian</u> doctrine.

> 3.   <u>Christian</u> Doctrine Prong Two:  Whether ARRA Reporting Requirements Expressed a Deeply Ingrained Public Procurement Policy

The government does not fare any better when the court examines, under prong two, the public policies expressed in ARRA reporting requirements.  Plaintiff notes that ARRA reporting requirements only remained part of federal government procurement policy for about five years, beginning with 2009, the year Kudsk entered into this contract with the Army.  ECF No. 9 at 7.  Indeed, it is difficult to see a parallel between the venerable procurement policy discussed in <u>Christian I</u>—the right for the government to terminate a contract for convenience, which has been consistently protected since World War II—or the bonding requirement in <u>K-Con</u>, which has been in place since 1935.  <u>K-Con</u>, 908 F.3d at 726; <u>Christian I</u>, 312 F.2d at 426.  The court must agree with plaintiff that ARRA reporting requirements, which were newly-minted to track the effects of a specific economic stimulus package, were not the expression of a deeply ingrained federal procurement policy.

Defendant argues, nonetheless, that ARRA reporting requirements were similar to other contract clauses incorporated into procurement contracts by the <u>Christian</u> doctrine, because these requirements discouraged "'unnecessary and wasteful spending of government money,'" and thus satisfied the significant and deeply ingrained procurement policy prong of the doctrine.  ECF No. 16 at 10 (quoting <u>General Engineering</u>, 991 F.2d at 780).  The government's argument is colorable, in that some of the various ARRA reporting requirements could, indeed, help identify wasteful government spending.  But the focus of ARRA reporting requirements, as evidenced by the expiration of these reporting requirements after five years, appears to have been on ensuring accountability to the American public with respect to a massive and time-limited effort to leverage this country out of an economic recession.  <u>See</u> ECF No. 8 at 19-21 (describing the purposes of ARRA).  ARRA reporting requirements were not, therefore, analogous to the contract clauses expressing deeply ingrained and significant procurement policies incorporated into the contracts discussed in <u>Christian I</u>, <u>K-Con</u>, or <u>General Engineering</u>.

Based on its review of the record now before the court, neither prong of the <u>Christian</u> doctrine analysis supports the incorporation of ARRA reporting requirements into plaintiff's contract.  Count IV, in consequence, survives defendant's motion to dismiss.

IV.     Conclusion

Both Count I and Count IV of the complaint contain plausible claims.  On or before **September 20, 2019**, if desired, plaintiff may move to amend its complaint in light of the court's holdings in this opinion regarding Count I.  Any such motion must present the proposed amended complaint as an attachment to the motion and must also state the government's position on the motion.

In accordance with the foregoing, defendant's motion for partial dismissal, ECF No. 8, is **DENIED**.  On or before **September 20, 2019**, the parties are directed to **FILE** a **joint status report** proposing the next steps in this litigation.  In addition, should this decision require the parties to request leave to amend the discovery schedule in this matter, <u>see</u> ECF No. 18 (order), the parties shall do so by filing an appropriate joint motion with the court.

IT IS SO ORDERED.


s/Patricia E. Campbell-Smith
PATRICIA E. CAMPBELL-SMITH
Judge